argument is Brown v. Bi-State Development, counsel, and I hope you're ready to move the suit. May it please the court, counsel. Your Honor, this appeal arises out of the workers' compensation claim that was filed by the employee for alleged injuries to her left leg. The nature and extent of those injuries were disputed by the employer, and so the employee had filed a petition for hardship under Section 19B of the Workers' Compensation Act. Let me stop you for one second. Would you state your name and who you represent for the record? My name is Dan Sanchez, and I represent the appellant. He wasn't listening at all. I represent the appellant by State Development Agency. Thank you. Prior to the 19B hearing, however, the parties were able to come to a settlement of the claim. However, a dispute arose after that as to the specific terms of that settlement. The employee argued that by settling the claim, the employer had agreed to accept and pay for treatment related to a meniscus tear in the employee's left leg, which she believed was the result of a work injury. Whereas the employer argued that the specific and unambiguous language of the settlement contract only contemplated contusions to the employee's shin and knee. The dispute was heard before the Workers' Compensation Commission, and the commission agreed with the employer that the language of the contract was not ambiguous and that it only contemplated shin and knee contusions. Thus, the employer was not responsible for the disputed meniscus tear. The employee then appealed to the St. Clair County Circuit Court, and oral arguments were scheduled on October 26, 2016. However, the employer was not notified of that hearing date. The court contacted counsel for the employer at that time, and counsel for the employer advised that we never received notice of the hearing. It was agreed between the parties that we would then submit proposed orders for the court to rule on within 14 days. The proposed orders were due on November 9, 2016. We submitted our proposed order in time on November 8, 2016. We both emailed and mailed our proposed order to the circuit court as directed. The circuit court entered the employee's proposed order on November 7, 2016, and that's two days before the proposed orders were due by the court's own deadline. The employer never received a copy of that order, and then later the circuit court compounded the problem because they entered our proposed order on December 27, 2016. To our knowledge, the employee never received a copy of our proposed order that was entered by the court. In April 2017, it was the first time that it came to light that there were conflicting orders out there, and a hearing to reconcile the record was held at the suggestion of the circuit court. The circuit court clarified that it had intended to file the employee's November 7, 2016 order, and that by virtue of that, our order, which was entered on December 27, 2016, was void. So it was at this time, the first time, that it was clear what the court's intended order was. We then filed a petition to vacate under Section 214.01, which was denied on June 15, 2017. The court cited as its grounds for denial of that petition that the employer lacked a meritorious defense. However, the court granted that the employer had established the other two elements of 214.01 pertaining to due diligence. We then appealed that order of June 15, 2017 to this court. And to prevail on the 214.01 petition to vacate, a petitioner must demonstrate a meritorious defense in the underlying litigation, due diligence in presenting that defense in the underlying litigation, and due diligence in presenting and filing its 214.01 petition. Now, a de novo standard applies with regard to the meritorious defense element of that statute. However, an abusive discretion standard applies with regard to both due diligence standards. It is noted that equitable principles and the exercise of discretion still apply in 214.01 proceedings, not involving judgments alleged to be void. So let me stop you for a second. You're getting into, I know you're giving us the factual basis for the case in the appeal, but it seems like the issue that needs to be overcome initially is the jurisdictional issue. And Mitchell versus Fiat Ellis seems to be on point in the situation that we're in here today. So how do you argue what's your position with regard to, one, the circuit court having jurisdiction after its first initial order was entered? And secondly, how do we have jurisdiction here in this case? Sure. Well, Your Honor, we don't believe that Mitchell directly applies to this case. We think it's distinguishable for two reasons on which that holding relied. First, Mitchell said that the failure to receive a copy of an order does not negate or invalidate the finality of that order. Second, the Mitchell court held that the use of a 214.01 petition to vacate is not proper when you're using it as a vehicle to simply vacate an order, reenter the same order, and then restart a 30-day clock for appeal. We are not making either of those arguments in our petition to vacate. Rather, we asserted we're not asserting that the November 7, 2016, order is not final. It would make no sense to argue that because the very purpose of 214.01 is to allow for vacature of a final order more than 30 days after its entry. With regard to the second pillar on which Mitchell stands, we're not asking, we didn't ask the court to vacate the order simply to reenter the same order and give us a new 30 days for the purpose that we didn't get a copy of the order. We found that it was improper for the court to enter the order before its own deadline had expired and before it even received our timely filed proposed order, and also that the issue, another compounding issue being the entry of our order, which made us believe that we had prevailed on the appeal and prevented us from seeking any further action in the case. Aren't there court cases, though, that require the let against the attorneys to keep track of the case, regardless of what's mailed to them, what's sent to them? There are cases on that point. I would point to the due diligence elements discuss the responsibility of the attorneys, and it allows for some equitable consideration of the circumstances and facts to come into play. 214.01 provides relief where a petitioner can show the failure to defend a suit was the result of an excusable mistake. In evaluating a petitioner's diligence, the court examines the particular facts, circumstances, and equities of the underlying litigation. In determining the reasonableness of the petitioner's excuse, all of the circumstances attendant upon entry of the judgment must be considered, including the conduct of the attorneys. In Smith v. Airbroom, Inc., I would note that it says that, because a Section 214.01 petition is addressed to equitable powers, courts have not considered themselves strictly bound by the precedent, and where justice and good conscience may require it, a default judgment may be vacated, even though the requirement of due diligence has not been satisfied. And I understand this is not a default judgment in this case, but I think the equitable considerations that are clearly acceptable in a 214.01 analysis would equally apply in this situation. And then it is not a strict adherence to that standard that is required. It is possible for the court to find that due diligence was met. In your 14.01 petition, was there a meritorious defense that was set out in that petition as well? Yes, we established all three elements in our petition to vacate. Our meritorious defense was demonstrated in a few ways. First of all, our matter was presented to the commission in full, which considered the merits of our case and determined that we had prevailed or they found in our favor with regards to the dispute of the settlement contract. And in doing so, the commission established the merit, if not the validity, of our defense. And I know we don't need to prove the validity, but I think that is very strong evidence that our defense and the underlying litigation had merit. The court also did a couple of things to indicate that there was at least merit to our defense. The court was willing to entertain oral arguments, and while those did not occur because we did not receive notice of the hearing, it was then agreed among the parties and with the court that we would submit proposed orders. And with these two things, we believe that it indicates that the court acknowledged at least that there was merit to consider and weigh between the two. Are you saying a circuit court allowing parties or asking parties to submit argument results in the conclusion that the court thinks either party has merit in the position? I believe that it was – it asked for – Judge Lasheen in the circuit court asked for proposed orders to consider the arguments of both sides. But you're telling us that we should assume because Judge Lasheen was willing to have oral argument on this matter and asked for proposed orders from both sides that he thought either side had merit. You're basically saying that an administrative action indicated a substantive ruling or indication of a ruling by a circuit judge, and I don't see the logic in that. Well, I think that if there was no merit to a case, the court would not need to consider or weigh the arguments of either side. I have spent so many hours as a circuit judge listening to arguments without merit. I would beg to differ with you. Okay. Well, with regard, our third point on the meritorious defense is that we believe the court misapplied the meritorious defense argument. In his June 15, 2017, order in which he denied our petition to vacate, he cites only to the November 7, 2016 order, which was the proposed order submitted by the employee that was entered prematurely. And he cites that order as its rationale for why our case lacked merit. And so in that sense, we believe that the circuit court seemed to conflate the idea of a meritorious defense with a successful defense. And as I stated, as the Perman case indicates, an employee only needs to show sufficient facts which, if believed by the trier of fact, would allow the petitioner to defeat the claimant. We need not show that the court actually believed our argument, only that it had merit. And so therefore, because the employer had a meritorious defense, and because the court found in its June 15, 2017, order that we had satisfied the due diligence elements of 214-01, that we had established then all three elements of a petition to vacate, and that ruling against us in that order was in error. The employer, while we believe that we are only challenging the meritorious defense ruling of the court's June 15 order because he ruled in our favor with regard to due diligence, however, if the court considers the due diligence arguments, we likewise believe that we've satisfied those elements. I've already touched on briefly the issue of allowing the equities and understanding the circumstances and the fact that Smith v. Airroom, Inc. has indicated that courts are not strictly bound by precedent when certain circumstances allow equitable consideration. The circumstances in this particular case are that we argued our case diligently to the commission. When it was appealed to the circuit court, we acted diligently in filing a timely entry of appearance. We cooperated with opposing counsel in entering a scheduling order. We timely submitted our proposed order within the deadline submitted by the court, and we acted quickly when it was brought to light that there were conflicting orders out there. The matter was taken under advisement. An order was entered two days before the deadline, and as I said, we received no copy of that order. And then our order, again, was entered shortly thereafter in December of 16. Now, the time that elapsed between the two orders was not so unusually long to wait for an order that had been taken under advisement, especially considering that there were two major holidays in between Thanksgiving and Christmas. And so we don't think it was unreasonable to allow the court that time to enter an order and for us to receive a copy of it. And based on these circumstances, we believe it was reasonable when we received a copy of our proposed order that had been signed by the court and entered by the clerk that we had prevailed on our appeal and that there was no further action needed on our part to seek relief in this case. I've touched on Mitchell v. Fiat Alice and why it does not apply in this case, the two holdings being that it's not a proper vehicle to vacate and reenter the same order to get 30 more days to appeal and the fact that we're not contesting the finality of the order. We're contesting the totality of the circumstances, really, as to the entry of those orders and how the circumstances played out in this case. Other cases where misrepresentations of the court have permitted post-judgment relief involve the clerks giving wrong trial dates to parties or wrong hearing dates to parties. And that has merited warranted post-judgment relief, and I would say to Mutual Truck Barbs v. Nelson, Resto B. Walker, and Keput v. Hoey. Now, certainly there is no more definite misstatement of fact than the entry of the December 27, 2016 order, which represented to us that we had prevailed on the merits of our case. The attorney in Mitchell had relied on the misrepresentation of the court based on something that that court had no authority to do. Again, vacate the order, reenter the same order, give a new 30 days to appeal. However, the court in our case had unquestionable authority to enter an order in our favor on an appeal that was submitted with proposed orders, and so we don't think that the holding of Mitchell applies on that grounds either. Counsel, does it come down to whether or not the court had the authority or was correct or not, and it's finding that your client did not have a meritorious defense? Can you restate the question? The meritorious defense, that's what this case hinges on, isn't it? I believe it does. I mean, the court already found that you exercised due diligence. Right. It comes down to the meritorious defense, and I believe that we have clearly established that. The issue that the employee raises in her brief really pertained to the due diligence elements, which the court has already found that we had dissatisfied. And so in that regard, that's why I say we are really only challenging the first part, the meritorious defense element and the ruling with regard to that element, because the court ruled in our favor on the due diligence, and so as long as we can show meritorious defense, which we have, that the court was in error in denying our petition to vacate or in denying and entering their order on November 7th, 2016 and voiding our order of December 27th. With regard to the third element of 214-01, when it came to light that the conflicting orders existed, we acted quickly and in cooperation with the opposing counsel to seek to remedy that confusion and that conflict, and we appeared for a hearing on the employee's motion to clarify the record, and once it became clear what the court's intent was, then we acted quickly, and within two weeks we had our 214-01 petition to vacate on file. And so with regard to due diligence and filing our petition to vacate, I think we've more than satisfied that element as well. And so for those reasons in this argument, as well as those reasons presented in the brief, we would ask this court to reverse the circuit court's order of June 15th, 2017 and remand it back to the circuit court for consideration of the underlying issue and any other relief that this court deems just and proper. Thank you, counsel. Counsel? May it please the court. Mr. Sanchez, my name is Christy Cooksey, and I represent the employee, Tangela Brown. We're here today to argue that not only was the 11-7-16 order entered by Judge Lichten the final order, but that the court lacked jurisdiction to enter the December 27th, 2016 order, and also it would have been improper and the court was correct in denying the employer's Section 14-01 petition. Not often do I get to appear before an appellate court and have what I believe to be a completely on-point case by the Illinois Supreme Court. But in this case, I believe that Mitchell is. We've already discussed the facts of the case, but to just briefly go over it, there was a hearing, oral arguments, and the parties participated. The court asked for additional authority to be submitted by the parties. After that authority was submitted, then the court made an order. What was more egregious in Mitchell was that the court signed and dated the order, but never had it filed, and there was no fact that it would ever made it into the court file. In fact, the only indication that there was a court order was a note on the docket sheet that alerted the attorneys to the existence of an order, but not what the order said. And Mitchell very clearly, the Supreme Court instructed, implementation of Rule 303 requires attorneys to monitor their cases to ensure that appeals are timely filed. It goes on to state that Mitchell's counsel apparently did not receive actual notice of the March 1st order, even if caused by clerical oversight, does not excuse counsel's failure to monitor his case closely enough to become aware that the circuit court had ruled. We conclude the appellate court lapsed jurisdiction over the appeal and should have dismissed it. But how does that affect, I mean, that's all well said, but in regard to, in this instance, where counsel was given a deadline to file proposed orders and did so within the deadline, and then, you know, my understanding is the next thing that they knew was that their order was entered, and it was beyond the 30 days at that point to file an appeal. How is it equitable or fair to suggest that they weren't monitoring their case if they had followed through with the court order by submitting their proposed order a day in advance? I mean, are we suggesting that, is the Supreme Court suggesting that you need to essentially, you know, look at the circuit clerk's website every day to see if anything new has been done in each case that you have open in that circuit? When it comes to the technical requirements of appellate procedure, yes, Your Honor, I think that's exactly what the Supreme Court is saying. And I think what's interesting is that the employer in this case argues that because, and the interesting thing is they were already aware they missed something, because they got the call saying, we're here for oral arguments, where are you? Regardless of why they weren't there, guarantee they checked that docket and saw that the briefing schedule also had that hearing date, because they never made a motion to say, hey, wait, we didn't, we want our oral arguments or anything. They went ahead and submitted those proposed orders. But the fact that the court gave them the courtesy and used an efficient process by which it said, I'll look at the briefs and you can submit proposed orders and I'll make a decision, doesn't give them the right to not monitor their case. And I don't think there's nothing in the workers' compensation statute or in any statute that entitles them either to oral arguments at the circuit court level or to have proposed orders reviewed and considered before the judge makes his ruling. To me, that's a red herring because it's a matter of courtesy and efficiency. The other issue is they admittedly appear in the case, on that case, to file something and don't check the docket. And then admittedly, and I flagged this part in their brief because I found it so significant, were unaware of anything in that case and didn't check until January, which was well outside the 30-day requirement for them to do so. So unfortunately, and I'll be honest, I took a breath when the Mitchell case came out and we established office procedures to check dockets because it became our duty at that point. But that's why I think it's so important in this case to look at the fact that it is undisputed that they were in court after this order was entered, presenting their proposed order, and they filed something in this case. In the Mitchell case, our attorney came and talked to the clerk and said, hey, does he want another argument? We submitted our case law, and she had to look. And then they had to set another hearing, and then this order appeared that was on file stamp, and still the Supreme Court said, sorry, you should have been monitoring it. And Judge Harrison's dissent really shows that he believed, hey, this was never even filed or made a matter of public record, and the Supreme Court still said, sorry. In this case, there is no dispute that the November 7, 2016 order was a matter of public record. We got it. They say they didn't, but we got it. And that's why we quit monitoring the file. We didn't want to appeal. We were happy with the order that's done. But, yes, we do when it comes to technical appellate procedure, which I think is very important when it comes to the cases that they're relying on where the equities are different because in every case they've won that they've cited, it was a default judgment where somebody had no idea what was going on. They didn't get their day in court. They didn't get to present their client's case. And even some of them were so egregious that they had records that their client wasn't even involved in an accident where they had a $950,000 judgment against them. That's what 1401 is supposed to prevent. That is not technical appellate procedure. That's notice of your day in court. The employer had their day in court. We had a full hearing in front of the commission, and that record was closed. Then, I mean, and the commission made their decision. Then we go to the circuit court, and admittedly, the circuit court and Judge Lasheen made it very clear when he clarified the record, he read the briefs. He knew what he intended to do, and he clarified the record. And because of that, that's why they're saying Mitchell doesn't apply and 1401 is proper is just so misplaced because in this particular case, it's a work comp appeal. He's looking to decide. Oh, I'm sorry. I'm just something to say with regard to Judge Lasheen said that he read the briefs, knew what he was going to do, yet he entered both orders, which were completely contradictory to each other. Did he admit not reading one of the orders? He did. He did. In his 5-4-17 order, he said inexplicably, respondent presented this, and I thought it was a routine agreed order, and he signed it. And he said that, I'm sure, to let you guys know. And then he said, this is not my ruling. His ruling was the November order, and that's why Mitchell is so important in this case because it's clear that had Judge Lasheen, let's take it to where Mr. Sanchez wants to go, had Judge Lasheen said, okay, I'll grant your court 1401, what would have been the practical effect of that? His order wasn't going to change. And that's what he said in May when he clarified the record. My decision is the November order. And because of that, the pragmatic effect would have been, okay, 1401 granted, we enter the same order, guess what? We are analogous to Mitchell. And that's why the court said no. I'm going to deny it based on this case, based on my order. That is the order I wanted. Because of Mitchell, I can't do what you want because I would be in the exact same position the Supreme Court has ruled. But it's your position in this case that the 1401 motion that was eventually ruled on, the court had no authority to even take that out because the 30 days had elapsed and there was nothing for them to work on. Is that correct? Absolutely. And so they had no jurisdiction. You're also by extension arguing that we have no jurisdiction at this point either. And we've asked that the appeal be dismissed based on Mitchell. Yes. Our alternative argument is 1401 wouldn't have been proper in a work comp appeal anyway because regardless of the meritorious defense situation, the judge is making a decision on review. He is the one, and if you look at work comp law, which we don't need to get into the substance, he's the one that can enforce the contract, can look at the terms of the contract, interpret the contract. The commission doesn't have that right. They can do penalties, that's it. So this is what the judge, that's his job. And when he looked at this, he made that decision. It's clear what that decision is. And so there was no meritorious defense because he knew what the contract said. He decided that. So he wasn't going to reconsider himself based on that fact. So it wasn't a necessary thing to do. He would have put himself exactly squarely in the Mitchell situation. I'm just checking to make sure I covered everything. I apologize. Unless you have any other questions, I feel like I've covered it. I don't believe we do. Thank you, counsel. Thank you very much, Your Honor. Thank you. Counsel? Your Honors, opposing counsel touched on a couple of things in her response that I want to touch on. For one, she indicated that Mitchell precludes use of the 214-01 petition in a workers' compensation context because the circuit court, in essence, is a reviewing court rather than a, quote-unquote, trier of fact, as has been used in the case law language. While we understand that it presents a different wrinkle than the situation in which a 214-01 petition is usually used, that being at the trial stage of a court, we don't find any reason why Mitchell should preclude its use in a workers' compensation case that is before the circuit court on appeal. As I stated in my initial argument, the holding of Mitchell dealt with the particular actions of the parties, the fact that they were using a petition to vacate as a means to get a new 30-day clock to file an appeal and that it did not rule that 214-01 was improper in a workers' compensation context. If they did believe that, then they would have made that threshold ruling and they wouldn't have had to make the analysis that they did in that decision. She also discusses Rule 303 and the requirement that attorneys must monitor their file. Everything she discussed really, in essence, approaches the due diligence elements of 214-01, which hold an abusive discretion standard of review. Now, as I stated before, Smith v. Airroom allows for equitable considerations and to vacate an order where justice and good conscience may require it, and that the court granted that we had satisfied those elements. I don't believe that opposing counsel has sufficiently presented a case to find an abusive discretion with regard to the June 15, 2017, order. For those reasons, we would again ask that this court reverse the June 15, 2017, order and remand it back to the Circuit Court for further handling. I have one question. When I first got briefed on the case, I was wondering why this wasn't filed with the Workers' Comp Court. I sit on that court as well, and I actually was confused thinking that it was for that next docket and not this one. Yes, it had originally been filed here. It was transferred to the Workers' Compensation docket for the Appellate Court, but then it was realized that this really isn't germane to the Workers' Compensation issues within the case. That's secondary to the procedural issues that present itself, and that's really what the dispute is about here, and that's why it was brought back to the regular. When was that? Do you recall date-wise, time-wise, time frame? It would have been late last year, I believe. Okay. Was that by motion of either party, or was that? I don't believe so. I think the court did that on its own. It may have been a part of it. I don't recall. I wasn't sure. Okay. Thank you. Thank you, counsel. We appreciate the briefs and arguments and counsel, and we will take this case under advisement.